## Wabash Railroad Company v. Charles H. Wright.

1. CONTRACTS—*Acceptance of Offers.*—The quotation of a freight rate by a carrier is but an offer on its part to transport the specified articles at the rate named; and in this case the court is of opinion that the statement to one of the clerks in the office of the carrier that the rate quoted was accepted for five car loads, did not, under all the circumstances, amount to such an acceptance of the carrier's offer as to constitute a contract.

2. CARRIERS—*Contracts for the Transportation of Freight Not Transferable.*—A contract between a shipper and a carrier for the transportation of certain freight at a specified rate is a personal contract and can not be transferred so as to make it include freight shipped by any person other than the one with whom the contract was made.

3. SAME—*Acceptance of Bill of Lading as a Waiver of a Previous Offer.*—A carrier quoted a rate of freight to a grain broker who transmitted the offer to a prospective shipper. Before any grain was shipped such shipper was notified that an error had been made in the quotation and that the rate had been repudiated, and he thereupon shipped his grain and accepted a bill of lading in which the rate was fixed at a higher amount. *Held*, that such action was a waiver of any rights acquired under the original offer.

**Transcript**, from a justice of the peace. Appeal from the Circuit Court of Cook County; the Hon. FRANCIS ADAMS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1897. Reversed. Opinion filed April 8, 1898.

GEO. B. BURNETT, attorney for appellant.

There was no contract between appellee and appellant whereby the latter contracted to transport for appellee the grain in question.

The alleged contract growing out of the correspondence and interviews between appellee and appellant's servants in Chicago was not the contract upon which the rights of the

parties are to be determined, because the bills of lading, under which the grain was shipped, are to be taken as the sole evidence of the final agreement of the parties. Hopkins v. St. Louis & S. F. R. R. Co., 29 Kan. 544; O'Bryan v. Kinney, 74 Mo. 125; Hill v. Syracuse, B. & N. Y. R. R. Co., 73 New York, 351.

Besides, the contract made by Kerr as consignor was binding upon appellee as consignee, and he is conclusively presumed to have known its stipulations. Robinson v. Merchants' Des. Tr. Co., 45 Iowa, 40.

And the grain having been shipped under this contract, and received by appellee, he can not be permitted to recover upon the ground that there was a verbal contract under which the grain should have been shipped at a less rate.

It is insisted that the mere quotation of a rate of freight by a railroad company, although such quotation be made by its authorized agent, does not constitute a contract. Or, in other words, that the mere quoting of a rate of freight in answer to an inquiry, whether the person making the inquiry be a *bona fide* owner or shipper of grain, or a mere grain broker, who does not propose to ship any grain upon such quotation, does not constitute a contract, but it is insisted that such quotation of itself lacks all the elements of a contract. Chicago & A. R. R. Co. v. Jones, 53 Ill. App. 431; Chicago & G. E. R. R. Co. v. Dane, 43 N. Y. 240; Moulton v. Kershaw, 59 Wis. 316; Stensgaard v. Smith, 43 Minn. 11; Dillingham et al. v. La Batt (Tex.), 30 S. W. Rep. 370.

WALTER S. HOLDEN, attorney for appellee.

The quoting of a rate of freight by a railroad company in response to a request therefor, is an offer to carry for that rate. Robinson v. St. Louis, K. C. & N. Ry. Co., 75 Mo. 494; Bouker v. Long Island R. R. Co., 89 Hun, 132.

The oral contract completed by Wright when he stated that he accepted the rate on five cars was therefore complete and binding. It was not a *nudum pactum*, for both parties were bound by the terms of the agreement. Had Wright

failed or refused to ship the five car loads of grain as agreed he would have been liable for the damages caused by his refusal. Bangor Furnace Co. v. Magill, 108 Ill. 656; Chicago & G. E. R. R. Co. v. Dane, 43 N. Y. 240; Schouler's Bailments and Carriers, Sec. 94.

Where a contract has been entered into by mistake on the part of one of the parties, the contract is valid and can not be rescinded by the mistaken party. He is estopped to set up the plea of mistake. Bishop's Contracts, Sec. 701.

### Statement.

June 13, 1895, appellee commenced this suit against appellant before a justice of the peace, where a judgment was entered against appellant for $125, from which an appeal was taken to the Circuit Court, where there was a jury trial, resulting in a verdict and judgment for $118.90, against appellant, by whom the appeal to this court is prosecuted.

July 7, 1894, appellee, who was in the grain and commission business in Chicago, addressed a postal card to appellant as follows:

" Please give us the lowest rates on grain from Shawneetown, Illinois, to Chicago."

E. R. Newman, agent for appellant, indorsed on that postal card and returned it to appellee: " Seven cents per hundred weight C. L " (i. e., car load lots).

July 14th, appellee sent Mr. Day, a clerk of his, to the local freight agent of appellant, with a letter seeking confirmation of the rate noted on postal card. In reply, a clerk in the office of said local freight agent to whom this letter was handed, " made the remark that if that rate was quoted from that office, it was the tariff rate, and that is all he said."

Monday morning, July 16th, appellee went to the general freight office of appellant and saw some clerk there, whose name he does not know, and whom he says he would not recognize, and to whom he showed the postal card, saying that he had received it from the local office, and asking if

the rate there given was correct. The clerk " looked through his files " and handed the postal card back. " He could find nothing in regard to such rate, but he guessed the local office knew what they were doing. In going out of the office I (appellee) said I had guaranteed the rate upon five cars and I would accept it on five cars," which is all that was said.

Before that time, *i. e.*, Saturday, the 14th, appellee telegraphed to Mr. Ridgeway at Shawneetown, this: "We have written statement of rates and will guarantee you same upon five cars. Answer Monday. See letter." And the same day confirmed the telegram by letter, and added that he had written appellant "to confirm their rate," adding "It seems to be a very low one," etc.

Monday morning, the 16th, appellee received a telegram from Mr. Ridgeway saying: " Sell five cars No. 2 red wheat; prompt shipment; rate of freight you guarantee." Afterward and the same day, about 1:10 P. M., appellee contracted to sell five car loads of that kind of wheat to the Santa Fe Elevator Co. The same day, but after said contract of sale had been made, appellee was advised by appellant that there had been a mistake in quoting the rate from Shawneetown, and that it should have been twelve cents per hundred weight instead of seven cents. The same day appellee wrote to Mr. Ridgeway at Shawneetown that appellant had "discovered the error and say now that the rate quoted was an error of their grain clerk's."

Appellant's railway does not run to Shawneetown, but connects at Altamont with the B. & O. S. W. Ry., whose line does run there. The regular rate on wheat from Shawneetown to Altamont on the B. & O. S. W. Ry., was five cents, and from Altamont to Chicago on the appellant's line was seven cents.

Mr. S. S. Kerr delivered to the agent of the B. & O. S. W. Ry. Co. at Shawneetown five car loads of wheat consigned to A. M. Wright & Co., Chicago, to be transported by that company to its connection with the lines of appellant, and thence by appellant over its line to Chicago. The first such

shipment was July 20th, and the last July 26, 1894. Mr. Kerr was the owner of the wheat. At the time he shipped the grain Mr. Kerr asked the railway agent if he "had heard anything as to the confirmation of a seven cent rate." The agent replied that he had not. At that time the agent delivered to Mr. Kerr bills of lading for the wheat. Each one of these bills of lading states that it is mutually agreed that the rate of freight was twelve cents per hundred pounds. Mr. Kerr made no objection to these bills of lading.

Mr. Ridgeway was agent of Mr. Kerr, the owner of the grain, and appellee was acting for Mr. Ridgeway. All of the parties knew prior to the shipment of the grain that appellant claimed that the seven cent rate was an error, and an agent of appellant had told appellee that the company would not protect that rate, and that he would have to pay twelve cents if the grain was shipped.

Appellee delivered the bills of lading to the elevator company, and when the grain arrived in Chicago it was delivered by appellant to the elevator company. When Mr. Day called at the office of the elevator company to see if the grain had arrived he was informed that it had, and payment of the freight was demanded by the elevator company. Mr. Day, acting for appellee, gave to the elevator company a check made by appellee for the amount of the freight at twelve cents per hundred. That check is not produced, nor does it appear to whose order it was made payable. Frequently, and about that time, Mr. Day paid bills to the elevator company for appellant, and in receiving money on bills for freight for appellant the elevator company "acted the same as a clerk would act."

The elevator company's clerk was told, at the time of payment of the freight bills to him, that they were paid under protest, which is the only notice of payment under protest. Appellee, before commencing this suit, made a demand of appellant for repayment of five cents per hundred pounds.

Mr. Justice Horton, after making the above statement, delivered the opinion of the Court.

When appellee received from appellant the quotation of

a seven cent freight rate, it was but an offer on the part of appellant to transport grain for appellee at the rate named. The repeated efforts on the part of appellee to get a confirmation of the rate named show that he thought the rate " a very low one," as he wrote to Mr. Ridgeway.

The statement by appellee to one of the clerks in the general freight office of appellant, that he would accept the rate named for five car loads, does not, under all the circumstances appearing in this case, show such an acceptance of appellant's offer as to constitute a contract for the transportation of the grain in question. Chicago & A. R. R. Co. v. Jones, 53 Ill. App. 431.

This grain was the property of Mr. Kerr. Even if appellee had a contract with appellant to transport five car loads at the rate named, it was a personal contract, and could not be transferred so as to make it include any five car loads of wheat that might be shipped from Shawneetown by any other owner than the appellee. The law merchant does not apply to such a contract.

But even if it were conceded that, there being no other objection, Mr. Kerr might have availed himself of this contract, he did not in fact do so. Before he shipped any of this grain he was advised as to the mistake made in naming a rate. When he went to the railway agent at Shawneetown and inquired if there had been any confirmation of the seven cent rate, and was informed by such agent that there had not, he knew that the rate had been repudiated by appellant as an error; and, knowing that he shipped the grain and accepted a bill of lading in which the rate of freight was fixed at twelve cents per hundred pounds. That was a waiver of the right to claim that the five car loads of grain in question should be shipped at the rate of seven cents, if any such right had existed. Being the owner of the grain, he had a right to make such waiver as to said five car loads.

There is no testimony tending to show that the grain in question was purchased after appellee received the rate quotation from appellant's clerk, or that the owner of the

grain did anything, while relying upon such quotation of rate, whereby he suffered any loss. It is not claimed that any grain was shipped under the alleged contract other than the five car loads indicated. Appellee could only recover from appellant, if at all, because he had guaranteed a seven cent rate to Mr. Kerr through Mr. Ridgeway. Mr. Kerr having waived the right to claim the seven cent rate upon said five car loads of wheat, he could not hold appellee responsible upon the alleged guaranty. As appellee was not liable to Mr. Kerr upon the guaranty, he has not, in the eye of the law, suffered any loss by reason thereof, and hence he can not recover from appellant in this case.

The judgment of the Circuit Court is reversed, but perceiving no basis upon which appellee can recover, the cause is not remanded.